**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** § § § | |
| **Plaintiff,** § § | **Case No.:   3:13-cv-1940** |
| v. § § | |
| **DANIEL BERGIN,** § § | |
| **Defendant,** § § | |
| and § § | |
| **JACQUELINE ZAUN,** § § | |
| **Relief Defendant.** § § | |

## COMPLAINT

Plaintiff  Securities and Exchange Commission ("Commission") files this Complaint against Daniel Bergin ("Bergin" or "Defendant"), and, solely for purposes of equitable relief, Jacqueline Zaun ("Zaun" or "Relief Defendant").  The Commission alleges:

## SUMMARY

1. This is an on-going securities fraud and reporting violations case involving trading ahead of client trades ("front-running") and insider trading by Defendant Bergin, an equity trader at Dallas-based, SEC-registered investment adviser Cushing MLP Asset Management, LP ("Cushing").  Bergin conducted his illegal trading in the brokerage accounts of his wife, Relief Defendant Zaun, and actively concealed both the trading and the accounts from Cushing, its clients, and the Commission.

2. Beginning in at least 2011 and continuing through the present (the "relevant

period"), Bergin defrauded Cushing and its clients, including registered investment company clients ("Funds"), by using Cushing's confidential trading information to trade on and ahead of hundreds of Cushing's client trades in master limited partnership ("MLP") issuers, MLP-related securities, and other energy-income securities (collectively referred to as "MLP/Energy securities"). He concealed his trading activity by failing to disclose his trades or the existence of his wife's brokerage accounts to Cushing as required by Commission Rules and Cushing's internal policies and by falsifying at least six internal reports during the relevant period. As Cushing's primary equity trader, Bergin was privy to material, nonpublic information regarding the size and timing of securities trades Cushing intended to make for its clients in various MLP/Energy securities. In breach of his duties to Cushing and of his fiduciary duties to its clients, on at least 400 occasions that are currently known to Plaintiff, Bergin used this information to trade in his wife's undisclosed brokerage accounts in the same securities and on the same day he placed Cushing's client trades ("same day trading"), and in over 130 of those cases, front-running the firm's client trades. During the relevant period, he reaped illegal trading profits of at least $1.7 million.

3. By reason of these activities, Defendant violated, and unless enjoined, will continue to violate, Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5(a) and (c) thereunder, and Section 17(j) of the Investment Company Act of 1940 ("Investment Company Act") and Rules 17j-1(b)(1), (3), and (4) and 17j-1(d) thereunder.

4. The Commission, in the interest of protecting the securities markets from any further unscrupulous and illegal activity, brings this action against Defendant, seeking emergency relief in the form of an asset freeze and expedited discovery. In addition, the Commission seeks permanent injunctive relief, disgorgement of all illicit trading profits and

*SEC v. Bergin, et al.*     Page 2
COMPLAINT

benefits Defendant has received, plus accrued prejudgment interest, and civil monetary penalties. Finally, the Commission seeks disgorgement from Relief Defendant Zaun, who is in possession of funds derived from Defendant's fraud and has no legitimate claim to those assets.

## JURISDICTION

5.  The Commission brings this action pursuant to the authority conferred upon it by Section 21(d) of the Exchange Act [15 U.S.C. §78u(d)] and Section 44 of the Investment Company Act [15 U.S.C. § 80a-43]. The Commission seeks the imposition of civil penalties pursuant to Sections 21(d) and 21A of the Exchange Act [15 U.S.C. §78u(d) and 15 U.S.C. § 78u-1] and Section 42(e) of the Investment Company Act [15 U.S.C. § 80a-41(e)].

6.  The Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), 21A and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 77u(e), 78u-1 and 78aa] and Section 44 of the Investment Company Act [15 U.S.C. § 80a-43]. Defendant, directly and indirectly, made use of the mails and of the means and instrumentalities of interstate commerce, the mails, or the facilities of a national securities exchange in connection with the acts, practices and courses of business described in this Complaint.

7.  Venue is proper because transactions, acts, practices and courses of business described below occurred within the jurisdiction of the Northern District of Texas.

## DEFENDANT

8.  <u>Bergin</u>, age 40, is a resident of Dallas, Texas and has been married to, and lives with, Relief Defendant Zaun since July 2010. Bergin has been a trader at Cushing since 2008. In 2011, Bergin made approximately $360,000 in salary and bonus. Before he joined Cushing, Bergin was successively associated with seven registered broker-dealers, including Lew Lieberbaum & Co, Inc.; Tasin & Company, Inc.; Joseph Gunnar & Co. LLC; Frost Securites,

Inc.; Doyle, Miles & Co., LLC; Morgan Keegan & Company, Inc. and most recently with RBC Capital Markets Corp. from June 2006 to May 2008. Bergin held Series 7, Series 25, Series 55, and Series 63 securities industry licenses. According to Cushing's website, Bergin is a graduate of Iona College with a degree in Criminal Justice.

## RELIEF DEFENDANT

9. <u>Zaun</u>, age 38, is a resident of Dallas, Texas and is married to Bergin. Zaun is a Texas-licensed cosmetologist/esthetician.

## RELEVANT ENTITY

10. <u>Cushing</u>, formerly Swank Energy Income Advisors, LP, is a Dallas-based Texas limited partnership which has been registered with the Commission as an investment adviser pursuant to Section 203(c) of the Investment Advisers Act of 1940 ("Advisers Act") since June 2004. Cushing specializes in publicly-traded energy infrastructure MLPs, royalty trusts, and other energy-income investments. Cushing provides advisory and portfolio management services to institutional clients, including investment companies, private funds, and high net worth individuals. Cushing also sponsors four benchmark indices for MLP investments. It has approximately $2.5 billion in assets under management, approximately $1.2 billion of which is in investment companies registered with the Commission under the Investment Company Act.

## FACTUAL ALLEGATIONS

**A.   Background**

11. Cushing is a registered investment adviser that generally invests its clients in approximately ninety publicly traded MLP/Energy securities.

12. Many investment advisers to institutions, including Cushing, employ traders to manage their exposure to market price risks. A primary duty of traders is to place client orders,

especially large or otherwise material orders, in advantageous market centers with trading quantities that minimize unfavorable price movements against client interests.

13. Bergin is one of the traders employed by Cushing to manage its exposure to market price risk related to client orders. He is the trader primarily responsible for Cushing's equity trades. The other main trader is primarily responsible for options trading.

14. Cushing employs multiple portfolio managers ("PMs") to manage its client portfolios. The PMs decide which MLP/Energy securities to purchase or sell on behalf of the clients. Once the PMs have decided which securities to buy or sell and, in most cases, the total volume of shares for the transaction, they communicate their requests to the Cushing traders – including Bergin – orally, by email, by instant messaging, or by entering the requests into the firm's trade order management system, EZE Castle.

15. Bergin and the other Cushing trader determine exactly when to release the orders into the marketplace for execution and the size of each order or lot to buy or sell.

**B.    As an Experienced and Licensed Securities Professional, Bergin Knew His Personal Trading Was Subject to Commission Rules and Cushing's Policies**

16. Cushing's Code of Ethics and Personal Trading Policy ("Code of Ethics"), among other purposes, was designed to prevent persons employed by an investment adviser to a Fund who have access to client portfolios from engaging in fraud in connection with personal trades. All employees of Cushing are "access persons" if they obtain information regarding the purchase or sale of covered securities. Bergin is an access person.

17. The Code of Ethics, which applied to Bergin, prohibited him from using material, nonpublic or "inside" information for personal profit. The Code of Ethics includes in its definition of inside information "knowledge of pending orders or research recommendations, corporate finance activity, mergers or acquisitions, advance earnings information and other

material non-public information that could affect the price of a security." Further, the Code of Ethics provided that any inside information must be kept "strictly confidential."

18.     The Commission's rules required Bergin to submit to Cushing quarterly and annual reports of his personal securities transactions during the quarter or holdings during the year.

19.     In addition, Cushing's Code of Ethics contained further restrictions of when and how Bergin could trade in securities. Cushing's Code of Ethics prohibited Bergin from, among other things: (1) buying or selling, for his own direct or indirect benefit, any "Covered" security (as defined in the Code of Ethics and the federal securities laws) which he knew at the time Cushing was buying or selling, or "actively considered" buying or selling, on behalf of a client; (2) discussing with anyone Cushing's actual or contemplated securities transactions on behalf of a client, except in the performance of his official duties, and not for personal benefit or for the benefit of others; (3) using knowledge of portfolio transactions made or contemplated by Cushing for personal profit, or otherwise engage in fraudulent conduct in connection with Cushing's trading; and (4) knowingly taking advantage of a corporate opportunity of Cushing for personal benefit or abusing his position of trust.

20.     Further, Cushing's Code of Ethics required Bergin to disclose all personal brokerage accounts in which he has a direct or indirect interest, and to report and pre-clear certain personal securities transactions and holdings. Each quarter, Bergin was required to electronically execute questionnaires regarding his personal trading activity, including disclosing his covered securities transactions for the quarter.

21. As an experienced equities trader for Cushing and securities industry professional, Bergin knew his personal stock trading was subject to Cushing's Code of Ethics and Investment Company Act Rule 17j-1.

22. For example, since at least July 2012, on the questionnaires that Bergin electronically executed, he certified that he read, and agreed to comply with, the firm's Code of Ethics and that he had reported all personal securities transactions, holdings, and accounts required to be disclosed by that Code. Specifically, the questionnaires he signed stated that: "You are presumed to have a beneficial interest in securities accounts of immediate family members living in your household." He also certified his understanding that failure to comply with the Code of Ethics may result in disciplinary action by the firm or a regulatory body.

**C.     Bergin Selectively Disclosed His Accounts to Conceal His Trading**

23. During the relevant period, Bergin held brokerage accounts in his name at Fidelity Investments ("Fidelity") (account numbers ending -3668 and -5790) and Scottrade (account numbers ending -5061 and -0017). He disclosed those accounts to Cushing, and reported and pre-cleared trades in those accounts.

24. Bergin also held a brokerage account in his name at Fidelity (account number ending -2370) which he did not disclose to Cushing.

25. In June 2012, Cushing's Chief Compliance Officer cited Bergin for a Code of Ethics violation for a short term personal trade in a security that recently had been traded in client accounts. On that occasion, the compliance officer reminded Bergin of his obligations regarding pre-clearance of personal trades and the firm's policy which prohibits personal trades within seven (7) days of client trades.

26. During the relevant period, Zaun held accounts at Fidelity (account numbers ending -5953, -0418, and -6374) and later, Etrade (account numbers ending -2599, -8107, and -8174) (collectively, the "Zaun Accounts").

27. Bergin did not disclose any of the six Zaun Accounts to Cushing, although he was required to do so. Further, he certified quarterly during the relevant period that he had disclosed all accounts.

**D.   Bergin Personally Traded Ahead of, and On the Basis of Inside Information Regarding, Cushing Client Trades.**

28. During the relevant period, Bergin regularly accessed the Zaun Accounts from his office computer during the work day. For example, Bergin accessed Zaun's Etrade account from Cushing offices at least 1,123 times.

29. As part of his duties and responsibilities as a trader, Bergin learned about pending or contemplated Cushing client trades. On over 400 occasions, and on the basis of the confidential information in his possession, Bergin executed same day trades in the same securities that Cushing traded in on behalf of its clients. In at least 132 of those cases, he traded ahead of Cushing's client trades in MLP/Energy securities.

30. For example, on August 15, 2011, a Cushing PM directed Bergin via email to buy 85,000 shares of the common stock of Targa Resources Corp. ("TRGP"). Approximately two minutes after receiving the email, Bergin began placing orders to purchase a total of 15,000 shares of TRGP in Zaun's Fidelity account (ending #5953). After two of his personal orders for a total of 10,000 shares began executing, Bergin entered the firm's first buy order of TRGP on behalf of Cushing's clients. Bergin sold the stock in Zaun's account later the same day, realizing profits of $11,826.56.

31. The following chart shows the timing of Bergin's TRGP trading in each account:

| Time | Cushing's Trades | Bergin's Trades in Zaun's Account |
|---|---|---|
| 8:59:19 | Bergin receives trade order to buy 85,000 TRGP shares for client accounts | |
| 9:01:50 | | Bergin places first personal buy order for 5,000 shares; order executed at 9:02:34 |
| 9:03:08 | | Bergin places second personal buy order for 5,000 shares; order executed at 9:04:02 |
| 9:03:23 | Bergin enters firm's first buy order for 35,000 shares; order begins to execute at 9:05:27; order fully executed at 9:59:44 | |
| 9:06:08 | | Bergin places third personal buy order for 5,000 shares; order executed at 9:06:43 |
| 9:27:49 | | Bergin places first personal sell order for 100 shares; order executed at 9:32:35 |
| 9:40:20 | | Bergin places second personal sell order for 5,000 shares; order executed at 9:40:36 |
| 9:42:08 | | Bergin places third personal sell order for 9,900 shares; order executed at 9:42:38 |
| 9:56:36 | Bergin enters firm's second buy order for 50,000 shares; order executed at 9:57:07 | |
| **Bergin's Net One-Day Profit: $11,826.56** | | |

32. In total, during the relevant period, Zaun realized at least $1.7 million in profits in her accounts as a result of hundreds of Bergin's illegal same-day trades.

33. Over $520,000 of the $1.7 million represents profits from the approximately 132 known round-trip front-running transactions that were initiated ahead of Cushing's clients' trades.

34. Bergin never sought pre-clearance for any of the trades in the Zaun Accounts.

35. Bergin knew, or was reckless in not knowing, at the time he traded that he was in possession of material, nonpublic information about Cushing's trading activity on behalf of its clients. Nonetheless, he executed the trades for his personal benefit.

36. Investment advisory firms such as Cushing and their clients have an expectation that the employees of these advisory firms will not trade on confidential client order information. Moreover, Cushing's policies expressly prohibited its employees from using knowledge of Cushing's trades for personal benefit.

37. Bergin knew that he was obligated to refrain from trading in the same securities Cushing was buying or selling, or contemplating buying or selling, for its clients. Cushing and its clients would have wanted to know that Bergin was using their confidential order information for the purpose of personally benefitting by trading on and ahead of those trades.

38. Bergin breached his duty to Cushing and its clients by misappropriating confidential information concerning Cushing's plans to buy or sell MLP/Energy securities, by using that information to trade in his wife's personal trading accounts, and by failing to disclose that trading to Cushing.

39. Execution of a large Cushing order for the MLP/Energy securities he traded, had a strong potential to affect the stock's price, and therefore, information concerning such an order was material. As a licensed securities professional, Bergin was well aware of that fact.

40. Cushing is considered by many investors to be an authority on MLPs and energy-related securities. Cushing publishes four MLP Indices. Credit Suisse has a publicly-traded exchange traded note ("ETN") linked to the Cushing 30 MLP Index. Morgan Stanley has a similar product based on one of Cushing's Indices. Given Cushing's specialization and expertise in MLP/Energy securities, investors and potential investors in the MLP issuers would want to know that Cushing's portfolio managers deemed it advisable to purchase or sell the MLP/Energy securities. Such proprietary information is material to investors.

**E.      Bergin's Cover-up and False Certifications**

41.     In November 2011, Fidelity terminated Zaun's and Bergin's Fidelity accounts after surveillance personnel reviewed the trading activity in Zaun's accounts and the corresponding trades made on behalf of Cushing's clients. Fidelity's affiliate, National Financial Services, LLC, was the clearing firm for one of Cushing's executing brokers.

42.     Thereafter, Bergin opened Scottrade accounts -5061 and -0017 in his name, and Zaun opened accounts at Etrade. Bergin disclosed only the Scottrade accounts in his name, and not the Etrade accounts in Zaun's name.

43.     In at least October 2011, January 2012, April 2012, July 2012, October 2012, and January 2013, Bergin certified to Cushing that he had disclosed all personal brokerage accounts and private securities transactions.

44.     On each occasion, those certifications were false. Bergin knew, or was severely reckless in not knowing, that each certification was false at the time he made it.

45.     In addition, in February 2013, when the staff of the Commission's Office of Compliance Inspection and Examinations interviewed Bergin and asked him to disclose all personal accounts during an on-site examination at Cushing, Bergin failed to disclose the Zaun Accounts.

**F.     Bergin's Dissipation of Illicit Trading Profits**

46.     From July 2012 through February 2013, approximately $1.85 million was transferred out of Zaun's Etrade account to her bank account at Bank of America through large transfers as follows:

| Date | Withdrawal Amount |
|---|---|
| 7/17/2012 | $100,000 |
| 7/18/2012 | $100,000 |
| 8/17/2012 | $100,000 |
| 8/20/2012 | $ 50,000 |
| 9/12/2012 | $100,000 |
| 9/12/2012 | $100,000 |
| 9/13/2012 | $100,000 |
| 9/14/2012 | $100,000 |
| 9/20/2012 | $100,000 |
| 9/21/2012 | $100,000 |
| 10/11/2012 | $100,000 |
| 10/12/2012 | $100,000 |
| 10/26/2012 | $ 80,000 |
| 12/4/2012 | $ 20,000 |
| 1/8/2013 | $100,000 |
| 1/11/2013 | $100,000 |
| 1/31/2013 | $100,000 |
| 2/13/2013 | $100,000 |
| 2/15/2013 | $100,000 |
| 2/20/2013 | $100,000 |
| **Total:** | **$1,850,000** |

47.     During the same July 2012 through February 2013 period that $1.85 million was transferred from Zaun's brokerage accounts to her bank account, Bergin transferred approximately $1.1 million from *his* Bank of America bank account to his Scottrade brokerage account. In a number of instances, Bergin made large deposits in his Scottrade account on the same day, or within a few days after, the transfers from the Zaun Accounts to her bank account. For example, from September 12 through September 14, 2012, $400,000 was transferred from Zaun's Etrade account to her Bank of America account, and from September 12 through

September 20, 2012, Bergin transferred $350,000 from his Bank of America account to his Scottrade account.

48. Bergin and his wife have significant expenditures. For example, for several months in 2011 and 2012, their American Express bill was over $10,000. They also purchased a Porsche Panamera in February 2012 for $94,000.

## CLAIMS FOR RELIEF

### FIRST CLAIM

**Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(a) and (c) [17 C.F.R. § 240.10b-5(a) and (c)] thereunder**

49. Plaintiff repeats and incorporates by reference paragraphs 1 through 48 of this Complaint as if set forth *verbatim* herein.

50. Defendant, by engaging in the conduct described above, directly and indirectly, in connection with the purchase and sale of securities, and by use of the means and instrumentalities of interstate commerce and of the mails, has: (a) employed devices, schemes and artifices to defraud; or (b) engaged in acts, practices or courses of business that have operated or will operate as a fraud and deceit upon other persons.

51. By reason of the foregoing acts and practices, Defendant violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(a) and (c) [17 C.F.R. § 240.10b-5(a) and (c)] thereunder.

### SECOND CLAIM

**Violations of Section 17(j) of the Investment Company Act [15 U.S.C. § 80a-17] and Rule 17j-1(b)(1), (3), and (4) [17 C.F.R. § 270.17j-1(b)(1), (3), and (4)] thereunder**

52. Plaintiff Commission repeats and incorporates by reference paragraphs 1 through 48 of this Complaint as if set forth *verbatim* herein.

53. By engaging in the conduct described above, Defendant, an affiliated person of an investment adviser of a Fund, directly and indirectly, in connection with the purchase or sale of a security held or to be acquired by the Fund, has: (a) employed devices, schemes and artifices to defraud the Fund; (b) engaged in acts, practices or courses of business that operates or would operate as a fraud and deceit on the Fund; or (c) engaged in a manipulative practice with respect to the Fund.

54. By reason of the foregoing acts and practices, Defendant violated and, unless enjoined, will continue to violate Section 17(j) of the Investment Company Act [15 U.S.C. § 80a-17] and Rule 17j-1(b)(1), (3), and (4) [17 C.F.R. § 270.17j-1(b)(1), (3), and (4)] thereunder.

## THIRD CLAIM

### Violations of Investment Company Act Section 17(j) and Rule 17j-1(d) [17 C.F.R. § 270.17j-1(d)] thereunder

55. Plaintiff Commission repeats and incorporates by reference paragraphs 1 through 48 of this Complaint as if set forth *verbatim* herein.

56. Rule 17j-1(d) of the Investment Company Act [17 C.F.R. § 270.17j-1(d)] mandates that every access person of an investment adviser of a Fund, must initially and periodically report to the investment adviser information regarding any transaction in any covered security in which the access person had any direct or indirect beneficial ownership, and information regarding any account established by the access person in which any securities were held during the period of the report for the direct or indirect benefit of the access person.

57. At all times during the relevant period, Defendant, an access person at Cushing, failed to report to Cushing the existence of Zaun's brokerage accounts at Fidelity and Etrade, for which he had a direct or indirect beneficial ownership, and any details about the accounts. He also failed to report to Cushing any information about any of the securities transactions that were

made in the Zaun Accounts.

58. By reason of the foregoing acts and practices, Defendant violated and, unless enjoined, will continue to violate Section 17(j) of the Investment Company Act [15 U.S.C. § 80a-17] and Rule 17j-1(d) [17 C.F.R. §270.17j-1(d)] thereunder.

## FOURTH CLAIM

### Claim Against Relief Defendant as Custodian of The Proceeds of Fraud

59. Plaintiff Commission repeats and incorporates paragraphs 1 through 48 of this Complaint by reference as if set forth *verbatim* herein.

60. Relief Defendant received, directly or indirectly, funds and/or benefits from the Defendant, which are the proceeds of, or are traceable to the proceeds of, the unlawful activities alleged herein. Relief Defendant has no legitimate claim to these funds.

61. Relief Defendant has been unjustly enriched in that she obtained the funds as part of and in furtherance of the securities violations alleged herein, and under circumstances in which it is not just, equitable or conscionable for her to retain the funds.

62. The Commission is entitled to an order requiring that Relief Defendant disgorge these funds plus prejudgment interest thereon. In addition, the Commission is entitled to an order requiring Relief Defendant to provide an accounting of the receipt, use, and disposition of all trading proceeds.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Permanently enjoin Defendant Bergin from future violations of Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5(a) and (c) thereunder [17 C.F.R. §240.10b-5] and Section 17(j) of the Investment Company Act [15 U.S.C. § 80a-17] and Rules

17j-1(b)(1), (3), and (4) and 17j-1(d) [17 C.F.R. §§ 270.17j-1(b)(1), (3), and (4) and 270.17j-1(d)] thereunder;

(2)     Order Defendant to disgorge all ill-gotten gains from the conduct alleged herein, with prejudgment interest;

(3)     Order civil penalties against Defendant pursuant to Sections 21(d)(3) and 21A of the Exchange Act [15 U.S.C. §§ 78u(d)(3) and 78u-1] and Section 42(e) of the Investment Company Act [15 U.S.C. § 80a-41(e)] for violations of the federal securities laws as alleged herein;

(4)     Order Relief Defendant to disgorge an amount equal to the funds she obtained, directly or indirectly, from Defendant, which either are the proceeds of, or are traceable to the proceeds of, the unlawful activities alleged herein, plus prejudgment interest on that amount; and

(6)     Order such other and further relief as the Court may deem just and proper.

Dated: May 23, 2013                              Respectfully submitted,

                        *s/ Jennifer D. Brandt*
                        JENNIFER D. BRANDT
                        Texas Bar No. 00796242
                        United States Securities and Exchange Commission
                        Burnett Plaza, Suite 1900
                        801 Cherry Street, Unit 18
                        Fort Worth, Texas 76102
                        Telephone: (817) 978-6442
                        Fax: (817) 978-4927
                        *brandtj@sec.gov*
                        ATTORNEY FOR PLAINTIFF