IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Government, | § § | |
| v. | § § | |
| DANIEL BERGIN, | § § | Case No. 3:13-CV-1940-M |
| Defendant, | § § | |
| and | § § | |
| JACQUELINE ZAUN, | § § | |
| Relief Defendant. | § § | |

**DEFENDANT DANIEL BERGIN'S MOTION TO DISMISS
AND MEMORANDUM OF LAW IN SUPPORT**

# **TABLE OF CONTENTS**

I. PROCEDURAL AND FACTUAL BACKGROUND ................................................................ 1

II. STANDARD ................................................................................................................................ 3

III. ARGUMENT .............................................................................................................................. 5

    A. Introduction ........................................................................................................................ 5

    B. The Government's Insider Trading Claims Fail to Allege Sufficient Facts Under Rules 12(b)(6) and 9(b). ........................................................................................ 6

        1. Rules 10b5-1 and 17j-1(b) ........................................................................................ 6

        2. There are Insufficient Factual Allegations Concerning the Material, Nonpublic Information Allegedly Used by Mr. Bergin. ........................................................ 7

    C. The Government's Reporting Violation Claim Fails to Allege Sufficient Facts under Rule 12(b)(6). ........................................................................................................ 10

IV. CONCLUSION ........................................................................................................................ 11

CERTIFICATE OF SERVICE ........................................................................................................ 12

## TABLE OF AUTHORITIES

### CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................................4

*Bell Atlantic Corp v. Twombly*,
    550 U.S. 544 (2007)..............................................................................................3, 4

*Herrmann Holdings Ltd. v. Lucent Tech. Inc.*,
    302 F.3d 552 (5th Cir. 2002) .................................................................................4, 5

*SEC v. Kornman*,
    391 F. Supp. 2d 477 (N.D. Tex. 2005) ...............................................................5, 7, 9

*SEC v. Mayhew*,
    121 F.3d 44 (2d Cir.1997)........................................................................................8

*SEC v. Texas Gulf Sulphur Co.*,
    401 F.2d 833 (2d Cir. 1968).....................................................................................9

*Seidel v. Lee, CIV. A. 94-422-JJF*,
    1996 WL. 578449 (D. Del. Aug. 16, 1996) ...............................................................7

*United States v. Contorinis*,
    692 F.3d 136 (2d Cir. 2012).....................................................................................8

### STATUTES

17 C.F.R. § 240.10b5-1................................................................................................6
17 C.F.R. § 270.17j-1(b)(1), (3) and (4) ...................................................................7, 10

Fed. R. Civ. P. 8(a)(2)..................................................................................................4
Fed. R. Civ. P. 9(b) ............................................................................3, 4, 5, 6, 8, 9, 11
Fed. R. Civ. P. 12(b)(6)....................................................................3, 4, 5, 6, 7, 8, 10

Securities and Exchange Act 15 U.S.C.
    Section 78j .............................................................................................................1, 6

Investment Company Act 15 U.S.C.
    Section 80a...............................................................................................1, 6, 7, 10, 11

TO THE HONORABLE BARBARA M.G. LYNN

Defendant Daniel Bergin ("Mr. Bergin") respectfully submits this Motion to Dismiss and Memorandum of Law in Support pursuant to Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

## I.
## PROCEDURAL AND FACTUAL BACKGROUND

On May 23, 2013, the Securities and Exchange Commission ("the Government") filed a civil action against Mr. Bergin alleging violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5(a) and (c) thereunder and Section 17(j) of the Investment Company Act of 1940 and Rules 17j-1(b)(1),(3), and (4) and 17(j)-1(d) thereunder. The Government included Jacqueline Zaun, Mr. Bergin's wife, as a Relief Defendant (collectively, the "Defendants"), seeking to recover alleged trading profits she received. The Government seeks disgorgement against both Defendants. The Government also seeks civil penalties against Mr. Bergin and to enjoin him from committing further violations of the securities law.

In its Complaint, the Government alleges that Mr. Bergin obtained approximately $1.7 million in profits from "trading ahead" of his firm's clients and from trading on inside information. Complaint, at ¶¶ 32 and 33. The Complaint alleges that beginning in 2011, Mr. Bergin used his position as an equity trader at Cushing MLP Asset Management, LP ("Cushing") to conduct illegal, undisclosed trades in brokerage accounts held in his wife's name. Complaint, at ¶¶ 41-44.

The crux of the Government's claims is that Mr. Bergin used inside information to trade on or ahead of Cushing's client trades. Because Mr. Bergin was Cushing's primary equity trader,

he is alleged to have possessed and used material, nonpublic information regarding the size and timing of Cushing's client trades. *See* Complaint, at ¶¶ 2, 29 and 35 – 40.

Specifically, the Complaint charges that Mr. Bergin engaged in over 400 same-day trades as Cushing clients. *Id.* at ¶ 29. The Complaint alleges generally that all of these trades constitute insider trading in violation of the federal securities law. According to the Complaint, however, approximately 132 of these claimed trades were instances of "front-running" by Mr. Bergin, that is, trading ahead of Cushing client's trades on the basis of confidential information he allegedly possessed regarding the pendency of those trades. *Id.* at ¶ 33.

Throughout the Complaint, the inside information that Mr. Bergin is alleged to have possessed is "material, nonpublic information regarding the size and timing of securities trades Cushing intended to make for its clients in various MLP/Energy securities." *Id.* at ¶ 2. This purported knowledge of Cushing's forthcoming or intended trades on behalf of its clients is the only material, nonpublic information the Government alleges that Mr. Bergin possessed or used, and only in connection with some of the charged trades. *See Id.* at ¶ 2 ("Bergin used this information ['regarding the size and timing of securities trades Cushing'] to trade …").

Accordingly, based on the allegations set forth in the Complaint, Mr. Bergin was no longer in possession of material, nonpublic information after the execution of the contemplated Cushing client trades in the 260 plus non front-running trades. Instead, once Cushing made the public securities trades, the formerly confidential information became public information, and consequently no longer either material or nonpublic.

The Complaint specifically alleges that Mr. Bergin traded ahead of Cushing's clients 132 times based on the only inside information he allegedly was privy to, *i.e.*, the size and timing of Cushing client trades. *Id.* at ¶¶ 2, 29 and 35-40. However, the Government further charges that Mr. Bergin traded approximately 270 more times by making "same day trades in the same

securities that Cushing traded in on behalf of its clients." *Id.* at ¶ 29. It is evident on the face of the Complaint that the Government does not allege that these additional 270 trades constituted "front-running" by Mr. Bergin; otherwise, the Complaint would not distinguish them from the purported 132 front-running trades. Yet that is exactly what the Government has done here. *See id.* ("In at least 132 of those cases [the 400 trades], [Mr. Bergin] traded ahead of Cushing's client trades in MLP/Energy securities.").

The Complaint does not set forth with any specificity how these alleged same day trades constitute trading on the basis of material, nonpublic information in violation of the federal securities laws. Indeed, it provides no detail at all regarding what the alleged material, nonpublic information was, whether or how Mr. Bergin possessed it, and whether or how Mr. Bergin traded on it. Consequently, according to the Complaint, Mr. Bergin's alleged insider trading could have been accomplished only by front-running those client trades.

Accordingly, the Complaint is comprised of conclusory allegations that Mr. Bergin conducted hundreds of trades based on nonpublic, material inside information, but fails to plead specific or particular facts as to how or why these alleged trades are actionable under the federal securities law. Such conclusory allegations are not sufficient to meet the pleading requirements of Rule 9(b) or Rule 12(b)(6). Likewise, these claims fail because the Complaint does not provide sufficient facts demonstrating or pleading that Mr. Bergin possessed inside information and, if so, the particular material, nonpublic information he allegedly possessed and traded upon.

## II.
## STANDARD

The United States Supreme Court has mandated that fraud-based claims must be pled "with particularity." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 557 (2007). Further, a complaint must provide specific factual allegations sufficient to make the claims truly plausible. The Fifth

Circuit requires a complaint to set forth with particularity, when alleging fraud or mistake, the circumstances constituting the fraud. *Herrmann Holdings Ltd. v. Lucent Tech. Inc.*, 302 F.3d 552, 564-65 (5th Cir. 2002).

A motion to dismiss is appropriate to challenge a complaint that fails to "state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Further, the United States Supreme Court has held that a plaintiff's obligation under Federal Rule of Civil Procedure 8(a)(2) requires that a viable complaint include enough factual detail to state a claim for relief that is plausible on its face. FED. R. CIV. P. 8(a)(2); *Twombly*, 550 U.S. at 555-58. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

Legal conclusions couched as facts that do no more than raise speculation are insufficient. *Id.* at 664. As such, allegations phrased as legal conclusions need not be accepted as true, and claims that are merely possible or conceivable are subject to dismissal under Rule 12(b)(6). *Id.*; *Twombly*, 550 U.S. at 555. Thus, to avoid dismissal, the Government must plead facts sufficient to frame its claims as conceivable rather than merely plausible. *Iqbal*, 556 U.S. at 663.

Rule 9(b) of the Federal Rules of Civil Procedure is even more demanding. Specifically, Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b).

Because the requirements of Rule 9(b), which apply to allegations of fraud, are even more stringent than Rule 8(a), the decisions in *Twombly* and *Iqbal* apply with equal force to fraud claims. *See Twombly*, 550 U.S. at 557. The Fifth Circuit strictly interprets the "particularity" requirement of Rule 9(b), requiring a plaintiff to specify the fraudulent statements, identify the speaker and where the statements were made, and explain why such statements were fraudulent.

*Herrmann Holdings Ltd. v*, 302 F.3d at 564-65. In enforcement actions, the government, although given more leeway than a private plaintiff, still must allege generally the "who, what, where, when and how." *SEC v. Kornman*, 391 F. Supp. 2d 477, 494 (N.D. Tex. 2005).

### III.
### ARGUMENT

A. **Introduction**

The Complaint does not assert a factual legal basis that Mr. Bergin is liable for the misconduct alleged by the Government, even if its allegations are somehow not subject to the heightened pleading requirements of Rule 9(b). First, the Complaint fails to make a plausible case that Mr. Bergin personally traded on material, nonpublic information in hundreds of non front-running transactions set forth in the Complaint. Instead, the Government alleges that Mr. Bergin engaged in approximately 270 cases of insider trading that, under the only reasonable reading of the Complaint, were not cases of Mr. Bergin trading ahead of Cushing's clients, trades that he is alleged to have been aware. Accordingly, these purported transactions were not trades based on the only inside information identified in the Complaint. *See* Complaint, at ¶¶ 2, 29 and 35-40.

This alleged knowledge of planned or contemplated trades on behalf of Cushing clients is the only material, nonpublic information purportedly possessed or used by Mr. Bergin. *See, generally*, the Complaint. The Complaint fails to identify any alleged specific inside information used by Mr. Bergin in connection with any of these hundreds of non front-running trades. *Id.* Accordingly, the Complaint fails to plead with particularity the "what, where, when or how" of the circumstances constituting this alleged fraud. *Kornman*, 391 F. Supp. 2d at 494.

Second, the Government's insider trading claims, viewed collectively, fail to describe Mr. Bergin's alleged fraud with the required particularity and specificity mandated by Rules 12(b)(6)

and 9(b). In virtually all instances, the Complaint does not identify the issuers involved, trade dates, trade amounts and trading volume, accounts used, or the specific inside information allegedly used by Mr. Bergin and how. Conclusory labels and bare legal conclusions do not cure this deficiency. These unsupported and non-specific allegations do not comply with the purpose of Rule 9(b), namely, that a defendant be given enough specificity to truly understand the nature of the claim against him. The Government's claims under Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c) and Section 17(j) and Rule 17j-1 thereunder are insufficient due to the Complaint's sweeping generalizations.

Finally, the Complaint fails to allege sufficient facts relating to Mr. Bergin's alleged reporting violations under Rule 17j-1(d). Under this rule, an access person is required disclose, on a quarterly basis, information about transactions involving covered securities in which he participated, including: (1) the date of the transaction; (2) the number of shares; (3) the principal amount; (4) the nature of the transaction; (5) the price of the security; and (6) the date the report is submitted by the access person. Similar information is required to be reported on an annual basis. However, the Complaint fails to identify this material with any particularity as to provide Mr. Bergin sufficient notice of the factual allegations asserted against him.

**B.   The Government's Insider Trading Claims Fail to Allege Sufficient Facts Under Rules 12(b)(6) and 9(b).**

1.   Rules 10b5-1 and 17j-1(b)

Rule 10b5-1 of the Exchange Act defines when a purchase or sale constitutes trading on the basis of material, nonpublic information in insider trading cases brought under the Act. 17 C.F.R. § 240.10b5-1. The basis of the Government's Rule 10b-5 claim, and its corollary Section 17j-1 claim, is that Mr. Bergin engaged in insider trading. Specifically, the Complaint alleges that Mr. Bergin, as Cushing's primary equity trader, was privy to material, nonpublic information

regarding the size and timing of securities trades Cushing intended to make for its clients. Complaint at ¶¶ 2 and 29. In support of this claim, the Complaint generally—and vaguely—alleges that on at least 400 occasions, Mr. Bergin used undisclosed brokerage accounts to trade on the same day as trades he placed for Cushing's clients. According to the Complaint, over 130 of those trades were front-running cases. *Id.*

Similarly, Section 17(j) and its implementing rule prohibit persons affiliated with a registered investment company from engaging in fraudulent, deceptive or manipulative acts or practices in connection with the purchase or sales of securities held or to be acquired by an investment company. *Seidel v. Lee*, CIV. A. 94-422-JJF, 1996 WL 578449 (D. Del. Aug. 16, 1996). Specifically, Rule 17j-1(b)(1), (3) and (4) states that it is unlawful for any affiliated person of a fund, or investment adviser of a fund, in connection with the purchase or sale or of a security held or to be acquired by the fund (1) to employ any device, scheme or artifice to defraud the fund; (3) to engage in any act, practice or course of business that operates or would operate as a fraud or deceit on the fund; or (4) to engage in any manipulative practice with respect to the fund. 17 C.F.R. § 270.17j-1(b)(1), (3) and (4).

2. **There are Insufficient Factual Allegations Concerning the Material, Nonpublic Information Allegedly Used by Mr. Bergin.**

The Complaint does not provide sufficient information regarding Mr. Bergin's supposed insider trading to meet the pleading requirements of Rules 12(b)(6) and 9(b). As a preliminary matter, the Complaint cites to a single example of supposed front-running by Mr. Bergin. In other words, it provides detailed trading information for only one of "over 400 occasions" of supposed insider trading by Mr. Bergin. Complaint, at ¶ 29. This is wholly inadequate to plead the alleged facts with sufficient particularity, or, in Judge Lindsay's words, to identify the "who, what, where, when and how" of the charges. *Kornman*, 391 F. Supp. 2d at 494.

Moreover, it does not identify or describe even one example of a non front-running trade that Mr. Bergin engaged in, despite its general allegation that he did so almost 270 times. Complaint, at ¶ 29. Instead, the Complaint makes only conclusory global statements such as "Bergin was using their confidential order information for the purpose of personally benefiting by trading on and ahead of those trades." *Id.* at ¶ 37. What the Complaint fails to allege, however, are the necessary facts to plead these claims with the required particularity. At a minimum, the Complaint should give the basic facts of how the alleged fraud was accomplished, including providing the particulars of how Mr. Bergin allegedly engaged in insider trading on these hundreds of occasions, the trade dates on which he did so, the issuers, purchase or sale amounts, and the supposed inside information itself. Absent this confidential information regarding these supposed non front-running trades, the Complaint fails to comply with either Rule 12(b)(6) or Rule 9(b).

It is clear from the Complaint that there was no inside information upon which Mr. Bergin could even trade in connection with these hundreds of trades. Because the inside information Mr. Bergin is charged to have possessed related only to the size and timing of the Cushing securities to be traded (and in fact these securities had already been traded before he is alleged to have personally traded), he could not have been in possession of any inside information. Instead, this information would have become public at the time of the Cushing client trades that Mr. Bergin allegedly had advanced knowledge of and improperly used. *See SEC v. Mayhew*, 121 F.3d 44, 50–51 (2d Cir.1997) (holding that information is public if it is available to the public through SEC filings, the media, or other sources); *see also United States v. Contorinis*, 692 F.3d 136, 143 (2d Cir. 2012) (stating that information is also deemed public if it is known only by a few securities analysts or professional investors because their trading will set a share price incorporating this information).

Here, it is clear from the Complaint that not only were the trades complete but, as such, the inside information about the trades was known and fully incorporated into the stock price. "[A]nyone in possession of material inside information is an 'insider' and must either disclose it to investing public, or, if he is disabled from disclosing it in order to protect corporate confidence, or he chooses not to do so, must abstain from trading in or recommending securities concerned while such inside information remains undisclosed." *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 848 (2d Cir. 1968). Because Mr. Bergin is not alleged to have traded (in the 270 non front-running transactions) until such information was disclosed, he cannot be considered an insider or to have possessed material, nonpublic information in the first place. Consequently, this conduct cannot have violated Rule 10b-5 or Rule 17j-1(b).

The Government's allegations in *Kornman* provide a stark contrast to what should properly be pled to defeat a motion to dismiss. 391 F. Supp. 2d at 494. In *Kornman*, also an insider trading case, Judge Lindsay held that the complaint properly followed the requirements of Rule 9(b) by identifying "(i) the executives from whom Kornman allegedly misappropriated inside information; (ii) the dates on which the meetings with the executives allegedly occurred; (iii) the specific inside information on which Kornman allegedly traded; (iv) the dates and prices of the stock acquisitions; (v) the hedge funds through which Kornman conducted the alleged insider trading; and (vi) the profits Kornman realized through his allegedly illicit trading." *Id.*

Here, unlike in *Kornman*, there are no factual allegations concerning the following:

(1) The issuers in question;

(2) The dates, prices and volumes of the stock acquisitions (with the exception of one trade); or

(3) In the cases of hundreds of non front-running trades, even the material, nonpublic information that Mr. Bergin allegedly used when he traded.

These allegations simply do not provide the detail to plead the alleged fraud with particularity.

C. **The Government's Reporting Violation Claim Fails to Allege Sufficient Facts under Rule 12(b)(6).**

The Government alleges that Mr. Bergin violated Section 17(j) and its implementing Rule 17j-1(d) by not reporting the existence of his wife's brokerage accounts over which he allegedly possessed a direct or indirect beneficial ownership interest. Complaint, at ¶ 57. The Complaint also alleges that Mr. Bergin failed to report periodically to Cushing required information about any of the securities transactions made in those accounts. *Id.* As such, the Complaint alleges that Mr. Bergin violated the reporting requirements of Section 17(j).

Rule 17j-1(d) requires every access person of a fund or fund's investment adviser to make periodic reports to the investment adviser of certain holdings and securities transactions. 17 C.F.R. § 270.17j-1(d). Particularly, an access person is required to disclose, on a quarterly basis, certain information about covered securities transactions in which he directly or indirectly participated, including, *inter alia*, (1) the date of the transaction; (2) the number of shares; (3) the principal amount; (4) the nature of the transaction; (5) the price of the security; and (6) the date the report was submitted. *Id.* § 1(d)(ii). Annual reports to the investment adviser are also required to be submitted and include similar information. *Id.* § 1(d)(iii).

Here, the Complaint fails to identify by name any of the covered securities that Mr. Bergin is alleged to have acquired or sold but failed to report in violation of the reporting requirements of Rule17j-1(d). Consequently, the Complaint also fails to identify, for each unnamed security, any of the other information set forth in Rule 17j-1(d), including each securities price, the amount of shares bought or sold, the principal amount, and the date on which the report should have been submitted by Mr. Bergin.

Even if this statute does not fall under the purview of Rule 9(b), this information is insufficient to meet the pleading requirements of Rule 8(a) because this lack of detail surrounding the covered securities does not put Mr. Bergin on sufficient notice of the claim against him. Indeed, the Complaint even fails to allege how many of these covered securities he failed to report, when he should have reported the transactions, or any of the supporting transactional details of such trades. Accordingly, the Complaint fails to properly state a claim which relief can be granted under Section 17(j) and Rule 17j-1(d).

## IV.
## CONCLUSION

For all the foregoing reasons, Defendant Daniel Bergin requests that the Court grant this Motion to Dismiss and dismiss the Complaint with prejudice.

Respectfully submitted,

**BELL NUNNALLY & MARTIN, LLP.**

By: /s/ Jeffrey J. Ansley
Jeffrey J. Ansley
State Bar No. 00790235
jeffa@bellnunnally.com
Gregory D. Kelminson
State Bar No. 24070045
gregk@bellnunnally.com
Lindsey L. Goldstein
State Bar No. 24078571
lindseyg@bellnunnally.com

3232 McKinney Ave., Suite 1400
Dallas, Texas 75204
Tel: 214.740.1408
Fax: 214.740.1499

**COUNSEL FOR DEFENDANT
DANIEL BERGIN**

## CERTIFICATE OF SERVICE

    I hereby certify that on June 14, 2013, I electronically filed the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas, Dallas Division, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

Jennifer D. Brandt
Trial Counsel
United States Securities and Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, Texas 76102

Kevin Edmundson
Hohmann Taube & Summers
100 Congress Avenue, 18th Floor
Austin, Texas 78701

                                                                             */s/ Jeffrey J. Ansley*
                                                                             Jeffrey J. Ansley

1348279_2.docx