IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | No. 3:13-CV-1940-M |
| v. | § § | |
| DANIEL BERGIN, | § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's Motion for Monetary Remedies and Entry of Final Judgment [Dkt. No. 32]. The Motion is **GRANTED in part.** For the reasons discussed herein, the Defendant is **ORDERED** to pay $235,397 in disgorgement, a $500,000 civil penalty, prejudgment interest on the disgorgement sum from December 31, 2012 until the date of judgment, less seven days for the period of time Bergin's assets were frozen pursuant to the May 23, 2013 Order Freezing Assets, and postjudgment interest on the disgorgement sum pursuant to 28 U.S.C. § 1961.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 23, 2013, Plaintiff Securities and Exchange Commission ("the SEC") filed this action against Defendant Daniel Bergin ("Bergin"), alleging Bergin engaged in illegal front-running and insider trading that resulted in illegal trading profits of at least $1.7 million.[1] For the purposes of the SEC's Motion for Monetary Remedies and Entry of Final Judgment, and pursuant to the Agreed Partial Judgment, which preclude Bergin from denying the allegations in the SEC's Complaint, the relevant facts are:

---

[1] Dkt. No. 1 ¶¶ 1-2, 32.

> Beginning in at least 2011 and continuing through the present (the "relevant period"), Bergin defrauded [Cushing MLP Asset Management, LP ("Cushing")] and its clients, including registered investment company clients ("Funds"), by using Cushing's confidential trading information to trade on and ahead of hundreds of Cushing's client trades in master limited partnership ("MLP") issuers, MLP-related securities, and other energy-income securities (collectively referred to as "MLP/Energy securities"). He concealed his trading activity by failing to disclose his trades or the existence of his wife's brokerage accounts to Cushing as required by [SEC] Rules and Cushing's internal policies and by falsifying at least six internal reports during the relevant period. As Cushing's primary equity trader, Bergin was privy to material, nonpublic information regarding the size and timing of securities trades Cushing intended to make for its clients in various MLP/Energy securities. In breach of his duties to Cushing and of his fiduciary duties to its clients, on at least 400 occasions that are currently known to Plaintiff, Bergin used this information to trade in his wife's undisclosed brokerage accounts in the same securities and on the same day he placed Cushing's client trades ("same day trading"), and in over 130 of those cases, front-running the firm's client trades. During the relevant period, he reaped illegal trading profits of at least $1.7 million.[2]

On July 10, 2013, without admitting or denying the allegations against him, Bergin consented to the entry of an Agreed Partial Judgment, which included a permanent injunction and ordered Bergin to:

> [P]ay disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty pursuant to Sections 21(d)(3) and 21A of the Exchange Act [15 U.S.C. §§ 78u(d)(3) and 78u-1] and Section 42(e) of the Investment Company Act [15 U.S.C. § 80a-41(e)]. The Court shall determine the amounts of disgorgement and civil penalty upon motion of the [SEC]. Prejudgment interest shall be calculated from January 1, 2011, based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2).[3]

According to the Agreed Partial Judgment, the Court may determine the amount of disgorgement, civil penalty, and prejudgment interest based on affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standard for summary judgment set forth in Fed. R. Civ. P. 56(c).[4]

---

[2] *Id.*; Dkt. No. 23-1 ¶ 3; Dkt. No. 25 ¶ IV.
[3] Dkt. No. 25 ¶ IV.
[4] *Id.*

On June 6, 2014, the SEC filed its Motion for Monetary Remedies and Entry of Final Judgment as to Defendant Bergin.[5] On June 24, 2015, the Court stayed the deadline for Bergin to respond to the SEC's Motion, pending resolution of his criminal case, in which he was indicted by a grand jury for securities fraud arising from the same set of facts that underlie this civil action, except that the criminal indictment encompassed a period from January 2010 until May 2013.[6] On July 24, 2014, Bergin pled guilty to one count of securities fraud.[7] As part of his plea agreement, Bergin agreed to forfeit a 2012 Porsche and an amount equal to his proceeds from the front-running scheme described in the Indictment, to be determined at sentencing.[8] On April 24, 2015, the Court sentenced Bergin to thirty months of imprisonment, two years of supervised release, a $100 mandatory special assessment, and a $500,000 fine.[9] Bergin was also ordered to forfeit $1,384,603 in trading gains and the 2012 Porsche.[10]

On May 8, 2015, Bergin filed his Response to the SEC's Motion for Monetary Remedies and Final Judgment, and the SEC filed its Reply on May 22, 2015.[11] On May 27, 2015, the Court granted the SEC's Motion to Dismiss Relief Defendant Jacqueline Zaun (Bergin's wife), finding that all monetary relief sought against Zaun had been fully satisfied.[12]

---

[5] Dkt. No. 32.
[6] Dkt. No. 35; *see United States of America v. Daniel Lutz Bergin*, No. 3:13-CR-408-M, Dkt. No. 1 ¶ 9 (N.D. Tex. filed Oct. 16, 2013).
[7] *United States of America v. Daniel Lutz Bergin*, No. 3:13-CR-408-M, Dkt. No. 62 (N.D. Tex. filed Oct. 16, 2013).
[8] *Id.*
[9] *Id.* at Dkt. Nos. 94, 99.
[10] *Id.* at Dkt. No. 103 at 172–73 (Sentencing Hr'g Tr. at 172:24-173:9).
[11] Dkt. Nos. 36-37.
[12] Dkt. No. 39.

The only remaining issues to be decided by the Court are the amounts of (1) disgorgement; (2) civil penalty; (3) and prejudgment interest payable on the disgorgement sum by Bergin.[13]

## ANALYSIS

### I. Disgorgement

The SEC argues that Bergin should be ordered to disgorge the entire $1.7 million identified in the Complaint as ill-gotten gains from his securities fraud. Bergin disagrees, arguing that the Court should exercise its discretion and offset the disgorgement with the amounts he forfeited as part of his criminal sentence, including $1,384,603 and the 2012 Porsche. Bergin also asks the Court to deduct $595,000 in short-term capital gains taxes Bergin paid during the relevant time period.

Disgorgement is a means of "wrest[ing] ill-gotten gains from the hands of a wrongdoer." *S.E.C. v. Huffman*, 996 F.2d 800, 802 (5th Cir. 1993). "It is an equitable remedy meant to prevent the wrongdoer from enriching himself by his wrongs." *Id.* Because disgorgement serves a remedial purpose, it must be "causally related to the wrongdoing" at issue. *Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 413 (5th Cir. 2007).

When the SEC brings a civil action for a securities violation, "disgorgement need only be a reasonable approximation of the profits causally connected to the violation." *Id.* Once the SEC shows that "its disgorgement figure reasonably approximates the amount of unjust enrichment," the burden shifts to the defendant to "demonstrate the disgorgement figure [is] not a reasonable approximation." *SEC v. AmeriFirst Funding, Inc.*, 2008 U.S. Dist. LEXIS 36782, at *5 (N.D. Tex. May 5, 2008). However, the defendant may not plead financial hardship as a

---

[13] Dkt. No. 25 (Agreed Partial Judgment as to Daniel Bergin).

ground for denying disgorgement. *S.E.C. v. Druffner*, 517 F. Supp. 2d 502, 512 (D. Mass. 2007), *aff'd sub nom.*, *S.E.C. v. Ficken*, 546 F.3d 45 (1st Cir. 2008) (citing *S.E.C. v. McCaskey*, 2002 WL 850001, at *5 (S.D.N.Y. Mar. 26, 2002)). Furthermore, "any risk of uncertainty in calculating the amount 'should fall on the wrongdoer whose illegal conduct created that uncertainty.'" *S.E.C. v. Svoboda*, 409 F. Supp. 2d 331, 344 (S.D.N.Y. 2006) (quoting *S.E.C. v. Patel*, 61 F.3d 137, 140 (2d Cir. 1995)). Finally, "a defendant may be required in a criminal proceeding to pay a fine and forfeiture and be required in a civil enforcement proceeding to disgorge his unlawful gains." *S.E.C. v. Razmilovic*, 738 F.3d 14, 37 (2d Cir. 2013), *as amended* (Nov. 26, 2013), *cert. denied*, 134 S. Ct. 1564, 188 L. Ed. 2d 561 (2014) (citing *S.E.C. v. Palmisano*, 135 F.3d 860, 865–66 (2d Cir. 1998)).

The SEC alleged in its Complaint, which Bergin cannot challenge for the purposes of the SEC's Motion, that Bergin's ill-gotten profits approximated $1.7 million during the relevant period, from January 2011 until May 2013. However, Bergin argues that he should receive a credit against this amount for the $1,384,603 in ill-gotten gains and $80,000 Porsche he was ordered to forfeit in his criminal case. He notes that the underlying facts of this case and the criminal case are the same, only this civil case covers a shorter period of time than the criminal case.[14] Thus, Bergin contends that refusing offsets for the amounts he forfeited in his criminal case would, in effect, require Bergin to pay far more than he was enriched. Additionally, Bergin asks that the Court exercise its discretion to deduct $595,000 in short-term capital gains taxes he paid on his profits during the relevant time period.

---

[14] Bergin argues that if the Court applied the same analysis used in the criminal case, the total amount of Bergin's "front-running trading" from January 2011 through May 23, 2013 was roughly $1.3 million. Def. Resp. at 4 n. 1. Bergin does not explain this calculation or how he arrived at that figure.

The Court finds that the SEC has met its initial burden of showing that $1.7 million is a reasonable approximation of the profits Bergin earned from January 2011 until May 2013.[15] Accordingly, the burden shifts to Bergin to show $1.7 million is not a reasonable approximation. Although Bergin does not directly argue that $1.7 million is not a reasonable approximation, Bergin has demonstrated that he already forfeited $1,384,603 and the 2012 Porsche in connection with his criminal sentencing.[16] *See Svoboda*, 409 F. Supp. 2d at 344 (finding disgorgement award of $1,039,252 warranted after defendants incurred only $500,000 in criminal penalties and retained most, if not all, of their illegal profits).

The SEC does not argue that Bergin has retained $1.7 million in profits after his criminal sentencing. Rather, the SEC argues that Bergin's proposed offsets are unwarranted because, in calculating the criminal forfeiture amount, this Court took into account the prospect that Bergin would be ordered to disgorge $1.7 million in this case. The SEC also contends that the profit calculations are distinct in the civil and criminal matters. According to the SEC, the criminal forfeiture order was calculated using particular types of trades, *i.e.* same-day, same-direction front funning, whereas the ill-gotten gains in this action cover a broader illegal trading scheme, encompassing all purchases or sales made on the basis of material, nonpublic information.[17] The SEC argues that Bergin has not met his burden of showing which portions of the criminal forfeiture amount are duplicative of the disgorgement amount the SEC seeks in this case, making any offset speculative. *See S.E.C. v. Syndicated Food Service Int'l, Inc.*, 2014 WL 1311442, at *5 n. 5 (E.D.N.Y. Mar. 28, 2014) ("Having no means by which to determine what portion of [the

---

[15] Dkt. No. 1 ¶ 2.
[16] *United States of America v. Daniel Lutz Bergin*, No. 3:13-CR-408-M (N.D. Tex. filed Oct. 16, 2013), Dkt. No. 103 at 172–73 (Sentencing Hr'g Tr. at 172:24-173:9).
[17] The SEC does not elaborate on this argument, or explain why the total profits would be different based on the different calculations.

6

defendant's] criminal restitution obligation is tied to his participation in the . . . fraud, any offset would be entirely speculative.").

At Bergin's sentencing, the Court ordered him to forfeit $1,384,603, which it believed fairly represented the "amount of gain from the offense in issue."[18] The Court also ordered the forfeiture of Bergin's 2012 Porsche.[19] The Court stated that the $1,384,603 would be "reflected in a money judgment that the Court concludes is the defendant's gain from the front-running scheme described in the indictment."[20] However, in calculating Bergin's additional $500,000 criminal fine, the Court "assum[ed] that a disgorgement judgment [would] be entered in favor of the SEC in the amount of $1.7 million minimum."[21]

Thus, the Court found Bergin's ill-gotten gains to be $1,384,603 for the period of the indictment, which was from January 2010 until May 2013, and one year longer than the allegations in the SEC's Complaint in this case, yet the Court also set Bergin's $500,000 criminal fine assuming that the disgorgement amount in this case would be $1.7 million. To the extent the Court made an improper assumption about the disgorgement amount in this case, it would only impact Bergin's criminal fine, which was limited only by 18 U.S.C. §3571(d), to "not more than the greater of twice the gross gain or twice the gross loss . . . .," and neither party has moved for a modification of that fine. Moreover, the criminal forfeiture and civil disgorgement statutes, at least as applied to this case, are almost certainly directed towards the same funds. *Compare S.E.C. v. Contorinis*, 743 F.3d 296, 302 (2d Cir. 2014), *petition for cert.*

---

[18] *United States of America v. Daniel Lutz Bergin*, No. 3:13-CR-408-M (N.D. Tex. filed Oct. 16, 2013), Dkt. No. 103 at 172–73 (Sentencing Hr'g Tr. at 172:24-173:9).
[19] *Id.* Before announcing the fine amount, the Court made some assumptions on the record and asked the government or the defendant to seek a modification if either believed the Court was miscalculating the fine. *Id.* at 174:10-13.
[20] *Id.*
[21] *Id.* at 174 (Sentencing Hr'g Tr. at 174:14-16).

7

*filed*, 743 F.3d 296 (U.S. Oct. 23, 2014) (No. 14-471). (explaining that a wrongdoer may be ordered to disgorge unlawful gains that accrue to the wrongdoer directly) *with* 21 U.S.C. § 853 (ordering forfeiture of "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of a violation punishable by imprisonment of more than one year").

Accordingly, because the Court has already found $1,384,603 to be Bergin's gain from the scheme from January 2010 until May 2013, and civil disgorgement is solely a means to wrest ill-gotten gains from the hands of the wrongdoer, the Court finds an offset appropriate for the $1,384,603 Bergin was ordered to forfeit in his criminal case, *i.e.*, based on the Court's findings at Bergin's criminal sentencing, there are simply no other gains to be disgorged. *See Huffman*, 996 F.2d at 802; *S.E.C. v. Palmisano*, 135 F.3d 860, 863–64 (2d Cir. 1998) ("Defendant is only required to give back the proceeds of his securities fraud once."); *see also S.E.C. v. Opulentica, LLC*, 479 F. Supp. 2d 319, 331 (S.D.N.Y. 2007) (citing *Palmisano*, 135 F.3d at 864) (offsetting disgorgement obligation by amount paid in restitution pursuant to criminal judgment).[22] For the same reasons, the Court finds an $80,000 offset for the value of the Porsche is also appropriate.[23]

On the other hand, the Court is not persuaded that an offset for short-term capital gains taxes is appropriate, because any taxes paid by Bergin during the relevant period are not properly categorized as direct transaction costs. *See S.E.C. v. Dibella*, No. 3:04-CV-1342 (EBB), 2008

---

[22] The SEC's argument about using different calculations in the civil and criminal cases is a red herring. By ordering $235,397 in disgorgement, the Court is recognizing a distinction between the amounts at issue in the civil and criminal cases. For the SEC to obtain $1.7 million in disgorgement, it must simply show that Bergin retains $1.7 million in ill-gotten gains, and it has not met that burden, making the criminal forfeiture offsets appropriate.

[23] Def. Ex. A (Kelley Blue Book Valuation of 2012 Porsche Panamera, last visited May 7, 2015). The Court finds $80,000 to be a fair estimate of the vehicle's value, and an appropriate offset amount.


WL 6965807, at *3 (D. Conn. Mar. 13, 2008), *aff'd*, 587 F.3d 553 (2d Cir. 2009) ("[T]he deduction from the disgorgement amount . . . for general income taxes does not fall within the class of deductions occasionally allowed for transaction-specific costs."); *see also Svoboda*, 409 F. Supp. 2d at 345 (finding that the defendant "failed to identify any legal authority supporting the deduction of capital gains taxes from illicit trading gains").

After taking into account the foregoing offsets, the Court will deduct $1,464,603 from the $1,700,000 in ill-gotten gains sought by the SEC, making a disgorgement award of $235,397 appropriate.

**II.   Civil Penalty**

Under Section 21(d)(3) of the Securities Exchange Act and Section 42(e) of the Investment Company Act, a court may impose a civil penalty on a person who violates the Securities Exchange Act and/or Investment Company Act. 15 U.S.C. §§ 78u(d), 80a-41(e). However, pursuant to Section 21A of the Exchange Act, the amount of the civil penalty imposed for insider trading "shall be determined by the court in light of the facts and circumstances, but shall not exceed three times the profit gained . . ." *Id.* § 78u-1.

Civil penalties serve to punish the wrongdoer and deter future securities violations. *S.E.C. v. Life Partners Holdings, Inc.*, No. 1-12-CV-33-JRN, 2014 WL 7051375, at *6 (W.D. Tex. Dec. 2, 2014) (citing *S.E.C. v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1, 17 (D.D.C. 1998); *S.E.C. v. Moran*, 944 F. Supp. 286, 296 (S.D.N.Y.1996)). Although Sections 21(d)(3) and 21A of the Exchange Act and Section 42(e) of the Investment Company set a maximum penalty amount, a district court retains discretion in imposing a civil penalty. *Razmilovic*, 738 F.3d at 38 (citing *S.E.C v. Kern,* 425 F.3d 143, 153 (2d Cir. 2005)).

In determining whether a civil penalty is appropriate, and if so, the amount, courts consider: "(1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's *scienter;* (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; (5) whether the defendant has admitted wrongdoing; and (6) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition." *Life Partners Holdings*, 2014 WL 7051375, at *6 (quoting *SEC v. Razmilovic,* 822 F. Supp. 2d 234 (E.D.N.Y. 2011); *S.E.C v. Colonial Inv. Mgmt. LLC,* 659 F. Supp. 2d 467, 503 (S.D.N.Y.2009)).

The SEC asks the Court to impose the maximum $5.1 million civil penalty on Bergin, arguing that he acted with a high degree of scienter, made substantial profits over a period of two years, and engaged in insider trading on over 400 occasions.[24] The SEC also notes that Bergin attempted to conceal his wrongdoing by trading in unreported accounts under his wife's name, falsifying certifications to his employer, lying to the SEC when asked whether he disclosed all of this accounts, and never conceded wrongdoing. *Id.* The SEC contends that there are no mitigating factors present because Bergin acted alone, intentionally, and deceptively, making the maximum penalty appropriate.

Bergin argues that his criminal sentence has already served a deterrent purpose, there are no identifiable victims or quantifiable loss in this case, and he cooperated with law enforcement authorities. Moreover, he argues that the severe penalties he incurred as part of his criminal case warrant a modest civil penalty.

The Court finds that Bergin's criminal activity was egregious and carried out with a high degree of scienter. Although Bergin argues that there were no identifiable victims targeted in

---

[24] Dkt. No. 32 at 10.

Bergin's scheme, that position unfairly diminishes the harm Bergin did to his employer, its clients, and the industry that afforded him his livelihood.  Bergin's conduct was not isolated, and in fact, was recurring during a nearly two and one-half year period marked by deception and greed, as the Court explained at Bergin's criminal sentencing.  The Court takes none of the foregoing findings lightly in imposing a civil penalty on Bergin, but also recognizes Bergin's financial condition and the fact that he has already been ordered to pay $1,964,603 as part of his criminal sentence, and an additional $235,397 in disgorgement.  Considering those facts and Bergin's thirty months of imprisonment and two years of supervised release, and his ban from the securities industry, the Court finds that a reduced civil penalty is appropriate.  Thus, the Court finds that the facts and circumstances of this case warrant the imposition of a $500,000 civil penalty on Bergin.

### III.    Prejudgment Interest

"It is within the discretion of a court to award prejudgment interest on the disgorgement amount for the period during which a defendant had the use of his illegal profits. *Razmilovic*, 738 F.3d at 36.  "It is also within a court's discretion to order disgorgement of prejudgment interest on the principal amount to be disgorged, so as to 'to deprive the wrongdoer of the benefit of holding the illicit gains over time by reasonably approximating the cost of borrowing such gain from the government.'"  *S.E.C. v. Tavella*, No. 13 CIV. 4609 NRB, 2015 WL 72817, at *6 (S.D.N.Y. Jan. 6, 2015) (quoting *Contorinis,* 743 F.3d at 308).

In the Partial Agreed Judgment, the Court stated that "prejudgment interest shall be calculated from January 1, 2011, based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2)."  In its Motion, the SEC argued that Bergin should pay $166,213.27 on $1.7 million in disgorgement.

11

The SEC contended that, shortly after the asset freeze on May 23, 2013, Bergin's accounts were liquidated and the amounts were deposited into an interest bearing attorney trust account, which has been earning interest on the principal of Bergin's ill-gotten gains since May 30, 2013.[25] In their Joint Report Concerning Funds, the parties state that Bergin's counsel has $2,423,066.74, including prejudgment interest of $28,904.14 as of May 31, 2015, and that $129,153.00 is in various financial institutions, pursuant to the Court's May 30, 2013 Agreed Order Modifying Asset Freeze Order and Cancelling Order.[26] In its Reply, the SEC revised the proposed date range for its prejudgment interest calculation to December 31, 2012 (the last day of relevant trading alleged in the Complaint) to the date of judgment.[27]

Bergin responds with many of the same arguments he employed to offset his disgorgement and minimize his civil penalty. He argues his criminal sentence serves a sufficient deterrent purpose, the remedial purpose of securities law has already been fulfilled, and that there are no identifiable victims. Bergin also argues that he has not had access to $2.5 million in frozen funds since the inception of this case on May 23, 2013.

The Court will impose prejudgment interest on the disgorgement sum for amounts accrued from December 31, 2012 until the date of judgment. Although Bergin's funds were frozen from May 23, 2013 until May 30, 2013, Bergin has not shown that the prejudgment interest sought by the SEC is inappropriate given the short amount of time his assets were *actually* frozen. The facts before the Court show that Bergin had access to his ill-gotten gains from at least December 31, 2012 until May 23, 2013, after which his funds have been held in

---

[25] Dkt. No. 10 (May 23, 2013 Order Freezing Assets); Dkt. No. 16 (May 30, 2013 Agreed Order Modifying Asset Freeze).
[26] Dkt. No. 16.
[27] Dkt. No. 37 at 7.

trust by his counsel, Bell Nunnally, and other financial institutions, accruing interest since the May 23, 2013 Asset Freeze Order.[28] Thus, an award of prejudgment interest from December 31, 2012 until the date of judgment is warranted, less the less seven days for the period of time Bergin's assets were frozen pursuant to the May 23, 2013 Order Freezing Assets.

## CONCLUSION

For the reasons discussed herein, Defendant is **ORDERED** to pay disgorgement in the amount of $235,397; a $500,000 civil penalty; prejudgment interest on the disgorgement amount, from December 31, 2012 until the date of judgment, less the less seven days for the period of time Bergin's assets were frozen pursuant to the May 23, 2013 Order Freezing Assets, based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2); and postjudgment interest pursuant to 28 U.S.C. § 1961. The SEC shall prepare a proposed judgment that reflects the findings and conclusions stated in this Order.

**SO ORDERED**.

July 15, 2015.

_____
BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
**NORTHERN DISTRICT OF TEXAS**

---

[28] Dkt. No. 40 (Joint Report Concerning Funds).